**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN MINEHAN, individually and** | : | |
| **derivatively on behalf of** | : | |
| **CHRISTI INSURANCE GROUP, INC.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No. 21-cv-05314-CFK** |
| | : | |
| **ERIC G. MCDOWELL, et al.,** | : | |
| **Defendants,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **CHRISTI INSURANCE GROUP, INC.,** | : | |
| **Nominal Defendant.** | : | |

**<u>MEMORANDUM</u>**

**KENNEY, J.**                                                      **AUGUST 18, 2022**

## I.     Introduction

This case concerns a dispute between the shareholders of Christi Insurance Group, Inc.

(Christi), an independent insurance agency corporation organized under the laws of

Pennsylvania. On December 3, 2021, Kevin Minehan, the former President of Christi,

individually and derivatively on behalf of Christi (collectively, Plaintiffs) commenced this

shareholders' dispute against Eric G. McDowell, the current President of Christi, and Andrew T.

Lunney, the current Vice President of Christi (collectively, Defendants).[1]

Before the Court is Plaintiffs' Amended Motion for a Preliminary Injunction. ECF No. 6.

Plaintiffs ask the Court to enjoin Defendants McDowell and Lunney from continuing in their

---

[1] Plaintiffs also bring claims of aiding and abetting breach of fiduciary duty and civil conspiracy against Defendant McFadden Scott Insurance LLC, alleging that McFadden was involved in a scheme with the other Defendants to merge the two insurance agencies. Plaintiffs do not presently request preliminary injunctive relief against McFadden. *See* ECF No. 57 at 39.

roles as President and Vice President of Christi, from merging Christi with McFadden or any other company; from conducting Christi's operations from the 550 Pinetown Road, Fort Washington, PA office; from disclosing confidential information or trade secrets to any third parties; from disclosing the identity of Christi's clients to any other persons or companies; and from interfering with any present employees of Christi with respect to any business activity. ECF No. 6-1. Plaintiffs also ask that the Court appoint a receiver *pendente lite* or custodian to manage Christi's finances and assets for the duration of the litigation. ECF No. 57 at 4-5, 39; ECF No. 60 at 8-16. Plaintiffs base their request for injunctive relief on their claims for breach of fiduciary duty, minority shareholder oppression, and violations of federal and state trade secret laws. *See* ECF No. 6-1 at 2; ECF No. 6-3 at 19-28; ECF No. 57 at 39-41; ECF No. 61 at 23-36.

The Court permitted targeted discovery in advance of a hearing on the Motion for Preliminary Injunction. The hearing was held on June 2, 2022. Upon consideration of the testimony and evidence presented at the hearing and the parties' thorough briefing of the issues, the Court DENIES Plaintiffs' request for a preliminary injunction. The Court finds that Plaintiffs have not established a reasonable probability of success in the eventual litigation and have not shown irreparable harm. Plaintiffs claim that Defendants' continued management of Christi will result in irreparable harm to the agency, resulting in "a situation in which Mr. Minehan is left owning 43 percent of a company worth little to nothing." However, upon review of the record, the Court cannot find that Christi's financial management and stability have been meaningfully impaired by the management changes and decisions challenged by Plaintiffs. Defendants provided substantial evidence at the hearing that Christi's financial well-being has remained the same, if not improved, since Minehan's removal as President. The parties have also provided detailed evidence that Minehan used Christi's corporate funds for personal expenses, potentially

putting Christi in a precarious financial position, which Minehan now uses in an attempt to reassert control over the agency. In these circumstances, a preliminary injunction is neither necessary nor equitable. For similar reasons, Plaintiffs' request for appointment of a receiver *pendente lite* or custodian is denied. Appointment of a custodian is an extraordinary remedy, and Plaintiffs have not demonstrated why such a remedy is warranted. Accordingly, the Court DENIES Plaintiffs' Motion for Preliminary Injunction.

## II.     Procedural History

On December 16, 2021, Plaintiffs filed a Motion for Temporary Restraining Order (TRO) and Preliminary Injunction (ECF No. 4) and four days later filed an Amended Motion for TRO and Preliminary Injunction (ECF No. 6).  Plaintiffs seek to end Messrs. McDowell and Lunney's financial control over Christi and protect Plaintiffs from the alleged risk that Defendants pose to the financial stability and competitiveness of the agency. This Court held a hearing on December 22, 2021 and subsequently denied the request for a TRO. ECF No. 18.

At the direction of this Court, the parties met and conferred and submitted a Stipulated Order governing the parties' conduct leading up to a hearing on the Motion for Preliminary Injunction. ECF No. 16. On June 2, 2022, this Court held a Preliminary Injunction Hearing. At the hearing, the Court heard testimony from four witnesses: Kevin Minehan; Laif Eric Ringoen; Eric McDowell; and Andrew Lunney. ECF No. 52. On June 24, 2022, the Parties filed Proposed Findings of Fact and Conclusions of Law with supporting briefs on the issue of whether the Court should grant a Preliminary Injunction. ECF Nos. 58-61, 66.

### III.   Findings of Fact

1.  Plaintiff Minehan and Defendants McDowell and Lunney are employees and

    shareholders of Christi Insurance Group, Inc. ("Christi"), a corporation which sells a

    variety of insurance policies. ECF No. 50 ¶¶ 1, 2, 4.

2.  Minehan owns 43 percent of Christi. ECF No. 50 ¶ 2.

3.  McDowell owns 42 percent of Christi. ECF No. 50 ¶ 2.

4.  Lunney owns 15 percent of Christi. ECF No. 50 ¶ 2.

5.  In 2004, Minehan became Christi's President. ECF No. 59 ¶ 2; ECF No. 61 ¶ 9.

6.  Over time Minehan's relationship with McDowell and Lunney deteriorated, and on June

    1, 2021, an attorney for McDowell sent Minehan a letter stating:

    > "Even based on what we know now, we are confident that we can establish that
    > for purposes of purely enriching your personal net worth and assets at the sole
    > expense of Messrs. McDowell and Lunney, you have (1) caused significant
    > damage to the Agency as a going concern; (2) incurred significant corporate
    > waste; (3) taken irresponsible (in fact, dangerously reckless) business decisions,
    > including, but not limited to, failing to pay off the Agency's high balances in its
    > credit line and allowing a negative-balance commission escrow; and (4) treated
    > minority shareholders oppressively by doing all of the above and not properly
    > keeping them informed of major decisions."

    This letter requested that Minehan agree to have the controller "provide copies of all

    credit card statements paid by the Agency on a monthly basis for each partner to review,"

    to agree that that "[a]ll checks will be subject to two partner signatures," and to agree that

    that "[a]ll expenses above $5,000 will require approval by at least two partners."  ECF

    No. 52 at 66:7-11; Def. Ex. 2; ECF No. 59 ¶¶ 9-10; ECF No. 61 ¶ 56.

7.  On November 17, 2021, Minehan offered McDowell and Lunney the option of selling

    Christi and splitting the proceeds, having McDowell and Lunney purchase Minehan's

    shares in the Christi based on a broker's valuation, or having Minehan buy McDowell

and Lunney's shares based on the same valuation. ECF No. 1, Ex M; ECF No. 52 at 63:11-16; ECF No. 61 ¶ 64-65.

8.  McDowell and Lunney have declined to sell Christi to a third party, sell their shares to Minehan, or buy Minehan's shares. ECF No. 52 at 148:21-22, 152:2-7; ECF No. 61 ¶ 66.

9.  On November 23, 2021, the partners held a Special and Annual Meeting of Shareholders. ECF No. 59 ¶ 24; ECF No. 61 ¶ 75.

10. At the meeting, the partners voted to remove Minehan as Director and President of Christi, appoint McDowell in his place, and appoint Lunney as Vice President. ECF No. 59 ¶ 24; ECF No. 61 ¶ 76.

11. Minehan participated in the meeting and had the opportunity to vote. Def. Ex. 1; ECF No. 52 at 65:18-21, 66:4-6; ECF No. 59 ¶ 25.

12. Plaintiffs initiated this litigation on December 3, 2021. ECF No. 1.

   **A.  The Ringoen Report**

13. On June 2, 2021, the day after receiving McDowell's letter, Minehan sent a text message to the current controller, Ms. Christine Jardel, which stated:

   "Make sure our records are good. Shred any and all unwanted materials. My guess is he will have accountants going thru [sic] all documents. I'm sure he will want to look at credit card bills.

   Etc Plan for him to be an absolute pain in the ass."

ECF No. 50 ¶ 43; ECF No. 52 at 66:14-20; Pl. Ex. 18; ECF No. 59 ¶ 11.

14. In June 2021, the shareholders met to discuss expense management and financial issues and agreed to a forensic accounting of Christi. ECF No. 50 ¶ 44; ECF No. 59 ¶ 12; ECF No. 61 ¶ 58-60.

15. Mr. Ringeon, CPA, was hired to perform a forensic audit of Christi. ECF No. 59 ¶¶ 12-13; ECF No. 61 ¶ 61.

16. Ringeon was asked to assess Christi's books and records from January 2017 through August 2021, and tasked with evaluating the expenses charged to agency by each partner, reconciling their line of credit from the bank statements to their books and records, and providing his professional opinion on the need for a line of credit at Christi. ECF No. 52 at 84:3-14; ECF No. 59 ¶ 13-14; ECF No. 61 ¶ 86.

17. As part of his audit, Ringeon interviewed all of the partners and Christi's current controller, Ms. Christine Jardel. ECF No. 50 ¶ 45; ECF No. 52 at 85:7-18, 87:8-21; ECF No. 59 ¶ 15.

18. Ringeon met with Minehan for two days to discuss the schedules that Ringoen prepared. ECF No. 52 at 21:20-22:10, 87:17-21; ECF No. 59 ¶ 15.

19. Ringoen determined that Minehan owed the agency $230,000 based on his use of the agency's 224 account, which allows partners to pass personal expenses through the agency to get deducted from their earnings. ECF No. 52 at 89:18-90:12; Def. Ex. 7 at 4.

20. Ringoen calculated that in five years over $1 million in expenses was charged to Minehan's credit card, and this was roughly three times more than the combined expenses on McDowell's and Lunney's credit cards. ECF No. 52 at 91:15-92:1; Def. Ex. 7 at 4.

21. Ringeon also identified several anomalous, nonbusiness credit card transactions and cash advances charged to Minehan's card. ECF No. 52 at 92:2-98:2; Def. Ex. 7 at 5-9.

22. On occasion, other Christi employees would charge business expenses to Minehan's credit card. ECF No. 52 at 24:8-25:7, 153:8-156:5; Pl. Ex. 3.

23. In his Audit Report, Ringoen's concluded that "the lack of management oversight, accountability and transparency contributed to the Agency's escrow bank accounts negative balance and the need for voluminous line of credit activity." Def. Ex. 7 at 10; ECF No. 59 ¶ 36.

**B. Christi's Financial Management under Minehan**

24. During Minehan's tenure as Christi's President from 2004 - 2021, he was responsible for managing Christi's finances. ECF No. 50 ¶ 9; ECF No. 59 ¶ 6; ECF No. 61 ¶ 26.

25. Minehan testified that while he was President, Christi maintained an "insurance management system" set of books and a set of paper books, and that some transactions from Christi's credit line were only recorded in the paper books. ECF No. 52 at 68:19-69:17.

26. Minhan testified that the paper books were maintained by Christi's bookkeeper, Ms. Connie Rongione. ECF No. 52 at 69:18-21.

27. Rongione was Christi's bookkeeper from 2006 to 2021. ECF No. 50 ¶ 11; ECF No. 59 ¶ 43; ECF No. 61 ¶ 28.

28. While Rongione was employed at Christi, Minehan and Rongione often exchanged provocative electronic communications with one another. ECF No. 52 at 76:5-78:19; ECF No. 59 ¶ 46; ECF No. 61 ¶ 31.

29. At Minehan's direction, Rongione initiated transactions using Christi's credit line for Minehan's personal use including: $200,000 for a gold coin, $538,000 for a yacht, and $450,000 for a cattle farm. ECF No. 50 ¶¶ 33-38; ECF No. 59 ¶¶ 38-39; ECF No. 61 ¶¶ 41-45; Def. Ex. 4.

30. For at least some of these uses of the credit line, Minehan emailed McDowell and Lunney about the size and nature of the transactions. ECF No. 52 at 129:4-134:1; Pl. Exs. 19-21; ECF No. 61 ¶¶ 43-45.

31. For many of Minehan's transactions using the credit line, including the gold coin and cattle farm, Minehan testified that he instructed Rongione not to record the transactions in Christi's "insurance management system" books. ECF No. 52 at 68:11-69:3, 69:14-17, 73:24-74:2; ECF No. 59 ¶¶ 39-40, 45-46; Def. Ex. 4.

32. Minehan testified that these transactions and his repayments were recorded in the paper books. ECF No. 52 at 68:19-69:10, 74:15-74:21; ECF No. 59 ¶ 45; *see* ECF No. 61 ¶ 49.

33. Although Minehan was interviewed by Ringeon for two days as part of the Audit Report, Ringeon testified that he was "not familiar with" the set of paper books described by Minehan. ECF No. 52 at 100:4-7; ECF No. 59 ¶ 16.

34. Defendant McDowell also testified that he is not aware of a second set of books. ECF No. 52 at 122:24-123:1.

Faced with inconsistent testimony, the Court must assess the credibility of the witnesses. The Court finds that Minehan's testimony that these transactions were recorded in a set of paper books is not credible. The Court also finds that Minehan's testimony that he has since repaid every "loan" and that his repayments are recorded in the paper books is not credible. The record is replete with evidence of multiple transactions not recorded in Christi's primary set of books and examples of Minehan using the agency's resources to finance personal expenses and investments. Minehan admits that he instructed the bookkeeper not to record these transactions in the general ledger. Plaintiffs have provided little to no evidence that these transactions and the alleged repayments are recorded elsewhere. Minehan's statements regarding a second set of

books, which document every alleged repayment, are convenient and self-serving, and this Court finds those statements not credible.

### C. Minehan's Use of the 224 Draw Account

35. Minehan has access to Christi's 224 draw account that allows him to pass through personal expenses which are them deducted from his earnings. ECF No. 52 at 67:11-16.

36. In the past, Minehan would overdraw the account, meaning he would withdraw money exceeding his earnings, resulting in a negative balance that he would then owe the agency. ECF No. 52 at 67:11-68:3; Def. Ex. 3.

37. As of February 4, 2022, Minehan owed the agency $230,000 due to overdraw of his account. ECF No. 52 at 89:21-90:16; Def. Ex. 7.

38. Christi is presently not paying a W-2 paycheck to Minehan until he pays off the negative balance in his 224 account. ECF No. 52 at 117:23-118:22; ECF No. 59 ¶ 47.

39. McDowell testified that "once that account again is zeroed out, then and starts going to a positive, [ Minehan] will absolutely be paid, compensated with a W-2 paycheck." ECF No. 52 at 118:13-15.

40. Thus far, the negative balance in Minehan's 224 account has decreased from approximately $250,000 to $110,000. ECF No. 52 at 118:9-12; ECF No. 59 ¶ 67.

### D. Minehan's Property Used as Collateral

41. During Minehan's tenure as Christi's President, Christi maintained a line of credit with Firstrust Bank ("Firstrust"), which was then transferred first to Penn Community Bank ("Penn Community"), and then to Huntingdon Valley Bank ("HVB"). ECF No. 50 ¶ 10; ECF No. 59 ¶ 5; ECF No. 61 ¶ 7.

42. Christi's credit line with Huntingdon Valley Bank was collateralized by a building located at 320 Bickley Road, Glenside, Montgomery County, Pennsylvania 19038 which is owned by Minehan. ECF No. 52 at 12:13-17; ECF No. 61 ¶ 8.

43. This line of credit Christi held with Huntingdon Valley Bank has been paid off and Minehan's building at 320 Bickley Road has been released as collateral for that line. ECF No. 59 ¶¶ 61-62; ECF No. 66 at 4.

**E.  Management of Christi in 2022**

44. At or around January, 2022, Christi relocated from 320 Bickley Road, a building owned by Minehan and previously collateralized via Christi's line of credit, to a new, shared office space located at 550 Pinetown Road, Fort Washington, Pennsylvania 19034. *See* ECF No. 50 ¶¶ 18-23; ECF No. 52 at 25:12-26:24; ECF No. 61 ¶¶ 67, 74.

45. The decision to relocate Christi from 320 Bickley Road to 550 Pinetown Road was made by McDowell and Lunney and did not include Minehan. ECF No. 52 at 156:22-157:1; ECF No. 61 ¶¶ 67-73.

46. Christi presently shares this office space with McFadden Scott Insurance LLC, a separate insurance agency. *See* ECF No. 50 ¶¶ 18-23; ECF No. 61 ¶¶ 67, 74.

47. In 2022, Minehan has received at least one notice that Christi's payroll account was overdrawn. ECF No. 52 at 53:13-18; ECF No. 61 ¶ 97.

48. Since at least December 2022, Christi has recorded some commission statements in a potentially irregular manner. ECF No. 52 at 39:4-51:4; ECF No. 61 ¶¶ 98-117; *but see* ECF No. 59 ¶¶ 54-55 and ECF No. 52 at 115:5-23.

49. This year, some of Christi's employees have seen their books of business decrease as compared to previous years. ECF No. 52 at 35:2-36:1, 37:14-38:7; Pl. Exs. 7-9; ECF No. 61 ¶¶ 122-127.

50. Some employees have brought in more new business as compared to the previous year. ECF No. 52 at 142:2-7.

51. Ms. Molly Frank, Mr. Minehan's sister, is an employee of Christi. ECF No. 50 ¶ 46; ECF No. 52 at 127:6-12.

52. Ms. Frank recently received a 36% salary increase, the largest increase of any Christi employee. ECF No. 50 ¶ 46; ECF No. 52 at 127:6-22; ECF No. 59 ¶ 76.

53. Minehan's mother is also on the payroll at Christi. ECF No. 52 at 128:1-9; ECF No. 59 ¶ 75.

54. Since Minehan was voted out of Christi's presidency in November, 2021, he has continued to receive periodic emails regarding Christi's finances. ECF No. 52 at 31:16-21, 65:1-13, 118:23-119:19; ECF No. 59 ¶¶ 69-70; *see* ECF No. 61 ¶¶ 98, 102-104, 122.

55. Minehan has also received individual producer reports. ECF No. 52 at 34:14-18.

56. McDowell and Lunney have made changes to Christi's expense management, implementing new controls and policies. ECF No. 50 ¶¶ 48-49; ECF No. 52 at 119:20-121:25; Def. Ex. 8; Def. Ex. 9; ECF No. 59 ¶ 71.

57. Defendants McDowell and Lunney are currently not taking salaries. ECF No. 52 at 115:2-4.

58. In 2022, Christi has reduced its expenses by $700,000 and paid down its line of credit by $190,000. ECF No. 52 at 114:11-115:1; ECF No. 59 ¶¶ 59-60.

59. Christi's profits have increased by approximately $600,000 compared to last year. ECF No. 52 at 114:11-16.

60. Employee morale at Christi substantially improved after the management changes. ECF No. 126:17-127:5, 150:18-151:6; ECF No. 59 ¶ 74.

## IV.    Standard of Review for a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Groupe SEB USA, Inc.* v. *Euro-Pro Operating LLC,* 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter* v. *Natural Res. Def Council, Inc.,* 555 U.S. 7, 24 (2008)). Accordingly, granting preliminary injunctive relief, is only appropriate "upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22.

"To obtain a preliminary injunction, the moving party must show: "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured ... if relief is not granted.... [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg,* 858 F.3d 173, 176 (3d Cir. 2017).

The first two factors, (1) reasonable probability of eventual success in the litigation and (2) irreparable injury if relief is not granted, are "gateway factors," because the Court must first determine whether the movant has met these two factors before it considers the possibility of harm to other interested persons and the public interest. *Id.* at 179. If the first two "gateway factors" are met, the Court then "considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* "All four factors should favor preliminary relief before the injunction will issue." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992)).

To show the first gateway factor required for a preliminary injunction, a reasonable probability of eventual success in the litigation, a Plaintiff "must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly v. City of Harrisburg,* 858 F.3d 173, 176 (3d Cir. 2017)*.*

To show the second gateway factor required for a preliminary injunction, an irreparable injury if relief is not granted, a Plaintiff must "produce affirmative evidence indicating that he or she will be irreparably harmed should that relief be denied." *See Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987). The injury must be "actual and of serious consequence, not merely theoretical." *See A.L.K. Corp. v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 764 (3rd Cir.1971). The injury must be irreparable, such that the injury is "of a peculiar nature, so that compensation in money cannot atone for it." *A. O. Smith Corp. v. F. T. C.*, 530 F.2d 515, 525 (3d Cir. 1976) (citation omitted). In other words, "[e]conomic loss does not constitute irreparable harm." *See Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994).

V.     **Discussion**

Plaintiffs request a preliminary injunction based on the probability of success on the merits of their claims of breach of fiduciary duty, minority shareholder oppression, and violation of federal and state trade secrets laws.  ECF No. 6-1 at 2; ECF No. 6-3 at 12-22; ECF No. 41 at 17-20; ECF No. 61 at 23-36.  Plaintiffs also argue that a receiver should be appointed over Christi due to Defendants' oppressive actions and waste of corporate assets pursuant to 15 PA.C.S. §§ 1767. ECF No. 6-2 at 2; ECF No. 61 at 40-42. Because Plaintiffs have failed to show a reasonable probability of eventual success in the litigation and failed to show irreparable harm, the Court denies the Motion for Preliminary Injunction.

**A.  Plaintiffs Have Not Shown a Reasonable Probability of Eventual Success in the Litigation or an Irreparable Injury for the Asserted Claims**

**i.** <u>Breach of Fiduciary Duty and Minority Shareholder Oppression Claims</u>

**a.** <u>Legal Standards</u>

In Pennsylvania, majority shareholders of a corporation owe a fiduciary duty to minority shareholders. *See Retina Assocs. of Greater Phila., Ltd. v. Retinovitreous Assocs., Ltd.*, A.3d 263, 277 (Pa. Super. Ct. 2017). This fiduciary duty prevents majority shareholders from using their power to exclude minority shareholders from their share of the benefits. *Ferber v. Am. Lamp Corp.*, 469 A.2d 1046, 1050 (1983). To establish a breach of fiduciary duty under Pennsylvania law, plaintiffs must prove: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries." *Dinger v. Allfirst Fin., Inc.*, 82 F. App'x 261, 265 (3d Cir. 2003).

Pennsylvania courts recognize that freezing out a minority shareholder "for the benefit of the majority shareholders constitutes a breach of the majority shareholders' fiduciary duty to the minority shareholders." *Ford v. Ford*, 878 A.2d 894, 905 (Pa. Super. 2005). Majority shareholders may not use the corporate process to deny a minority shareholder his right to participate or to exclude the minority shareholder from the proper share of benefits. *See Viener v. Jacobs*, 834 A.2d 546, 556 (Pa. Super. Ct. 2003). Courts may find that a minority shareholder has been frozen out when that shareholder's power or compensation is substantially diminished by means of generally oppressive conduct, restriction of their employment in or access to the corporation, payment of excessive salaries to majority shareholders, withholding of information, and exclusion of minority shareholders from decision-making. *See Bair v. Purcell*, 500 F. Supp. 2d 468, 484 (M.D. Pa. 2007). "Oppressive actions refer to conduct that substantially defeats the

14

'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise." *Ford v. Ford*, 878 A.2d 894, 900 (Pa. Super. Ct. 2005) (citation omitted).

b.   <u>Analysis of Plaintiffs' Claims</u>

The Court finds that Plaintiffs have not shown reasonable probability of success in the eventual litigation on their breach of fiduciary duty claims. The record does not support that Defendants acted in bad faith, put their interests before Christi's, or that Christi suffered a resulting injury. The choices to relocate Christi's office space, to reject a buy-sell proposal, and to remove Minehan from his role as President are not indicative of bad faith. Plaintiffs have also failed to demonstrate that they will be able to show that harm was suffered by Christi because of Defendants' actions. The parties presented extensive evidence regarding the agency's present and past profitability and the size of individual employees' books of businesses. Unsurprisingly, these numbers are not completely identical to the year before. Some books of business are down. Overall, expenses have decreased, and Christi has paid down the line of credit by $200,000. Plaintiffs argue that revenues are slightly down from last year, and Defendants argue that profitability is up. On this record, Plaintiffs have failed to show risk of harm, bad faith, or a reasonable probability of success on their claims of breach of fiduciary duty. Management practices at Christi have clearly changed, but that in and of itself does not show bad faith, breach, or injury. Based on the evidence before the Court, Christi's financial well-being is the same, if not better, than it was the year before.

In addition to the general claim of breach of fiduciary duty, Plaintiffs also make a claim of minority shareholder oppression, alleging that Defendants "squeezed" or "froze" Minehan out of Christi for their own benefit. Plaintiffs assert that Minehan was "frozen out" in a variety of ways including but not limited to signing a lease for a new office space without his knowledge;

15

withholding financial information related to Christi; removing him as President and offering him no other role as an officer; precluding him from engaging in any form of corporate governance within Christi; prohibiting him from all corporate decision-making; withholding from him wages and benefits; and rejecting his requests for reimbursement.

This Court finds that Plaintiffs have not shown reasonability probability of success on their minority shareholder oppression claim. The Court recognizes that the recent change in management has worsened an already tumultuous relationship between the shareholders. The Court also recognizes that the shareholders have at times struggled to promptly communicate and share information with Minehan throughout this litigation, and that since his removal as President, Minehan obviously has less authority and control over the agency. But interpersonal conflict among business partners does not, by itself, constitute shareholder oppression. When Minehan was removed as Christi's President, it was done pursuant to the bylaws. At that shareholder meeting, Minehan was present and had the opportunity to vote. Although the Court finds that a new lease was signed for Christi without Minehan's approval, this alone is not enough to demonstrate reasonable probability of success on the merits of the shareholder oppression claim. Apart from the lease for Christi's new office, Plaintiffs have not presented substantial evidence that Defendants are withholding significant financial information from Minehan, and Minehan testified that he periodically receives emails containing such information.

Furthermore, Plaintiffs' claims of shareholder oppression and bad faith must be considered in the context of Minehan's former management of Christi's finances. Whether an action is oppressive is based on the "reasonable expectations" held by minority shareholders. *Ford*, 878 A.2d at 890; *Adler v. Tauberg*, 881 A.2d 1267, 1269 (Pa. Super. Ct. 2005) (citation omitted). Based on the record thus far, Defendants' actions appear to be made in good faith and

for the benefit of Christi's employees and shareholders, including Minehan. Defendant's actions appear reasonable and should have reasonably been expected by a shareholder in Minehan's position. Plaintiffs have failed to show reasonable probability of success on this claim. The law does not require that "majority shareholders may never act in their own interest, but when they do act in their own interest, it must also be in the best interest of all shareholders and the corporation." *Viener v. Jacobs*, 834 A.2d 546, 556 (Pa. Super. Ct. 2003) (quoting *Ferber v. Am. Lamp Corp.*, 469 A.2d 1046, 1050 (Pa. 1983)). The record points to such a case here.[2]

Plaintiffs also have not shown an irreparable injury. Minehan's property, which was a large focus in Plaintiffs' arguments and filings before the June 2, 2022 hearing, is no longer held as collateral for Christi's line of credit, and is thus no longer a potential source of irreparable harm. Plaintiffs continue to assert that Defendants' actions pose a risk to Christi's general financial stability and competitiveness, but the evidence presented to the Court strongly suggests otherwise. Without a showing of irreparable harm, a preliminary injunction cannot issue.

        ii.  The Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act Claims

        a.  Legal Standards

"A court may enjoin the actual or threatened misappropriation of a trade secret." *See Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 110 (3d Cir. 2010). The requirements for pleading a trade secret misappropriation claim under the Defend Trade Secrets Act are (1) the existence of a trade secret; (2) that the trade secret is related to a product or service used in, or

---

[2] Regardless of this Court's findings regarding Plaintiff's Motion, Minehan possesses substantial rights as a minority shareholder. Minehan continues to have a right to corporate financial information, to reasonably participate in corporate decision-making, and to share in the benefits of Christi's ownership. The Court's holding that Plaintiffs have failed to show reasonable probability of success on the merits in no way diminishes Minehan's legal rights as a shareholder.

intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret. *Oakwood Laboratories LLC v. Thanoo,* 999 F.3d 892, 905 (3d Cir. 2021).

Like the Defend Trade Secrets Act, the Pennsylvania Uniform Trade Secrets Act (PUTSA), prohibits the acquisition, disclosure or use of a trade secret by a person who knows or has reason to know that it was acquired through improper means. *See Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC,* 40 F. Supp. 3d 437, 452 (E.D. Pa. 2014). Under the PUTSA, the elements of a misappropriation of trade secrets claim are: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003).

### b.  Analysis of Plaintiffs' Claims

Plaintiffs assert that the customer lists and identities in the Defendant Shareholders' possession constitute trade secrets because they have independent economic value and are not generally known or readily ascertainable. ECF No. 57 at 36. Defendants deny these allegations, contending that they are conclusions of law. ECF No. 55 at 17. At the June 2, 2022 hearing, Plaintiffs presented little to no argument or testimony regarding trade secrets. *See generally* ECF No. 52. Plaintiffs did not address the trade secret claims in the Plaintiffs' Findings of Fact and Conclusions of Law or Plaintiffs' Brief in Support of the Motion for Preliminary Injunction. ECF Nos. 60-61. Other than threadbare assertions and legal conclusions presented in the Amended Motion for Preliminary Injunction, ECF No. 6, Plaintiffs have presented no evidence or argument regarding the trade secrets claim. Accordingly, Plaintiffs have failed to demonstrate a reasonable probability of success on the merits or irreparable harm if relief is not granted.

**B.  The Court Need Not Evaluate the Remaining Factors for a**

**Preliminary Injunction**

"All four factors should favor preliminary relief before the injunction will issue." *Alliance Bank v. New Century Bank*, 742 F. Supp. 2d 532, 545 (E.D. Pa. 2010) (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992)). Because the Court has concluded that the Plaintiffs have failed to satisfy the two gateway factors, the Court need not evaluate the other factors.

### C. Appointment of a Receiver Is Not Warranted

Plaintiffs request appointment of a custodian to manage and preserve Christi's assets during this litigation. The Court has discretion to appoint a custodian when majority shareholders "have acted illegally, oppressively or fraudulently toward one or more holders or owners." 15 Pa. Cons. Stat. Ann. § 1767. This power "should be 'used sparingly, with caution and circumspection, and only in an extreme case.'" *Hill v. Cohen*, 40 F.4th 101, 105 (3d Cir. 2022) (citing *Tate v. Phila. Transp. Co.*, 190 A.2d 316, 321 (Pa. 1963)). "Whether to appoint a custodian or involuntarily dissolve a corporation are questions for the court to decide." *Meyer v. Del. Valley Lift Truck, Inc.*, No. 18-1118, 2021 WL 1923019 at *6 n.2 (E.D. Pa. May 13, 2021). Even if the court makes the necessary findings, the court is "authorized – but not required – to provide the sanctioned relief." *Linde v. Linde*, 220 A.3d 1119, 1143 (Pa. Super Ct. 2019). Plaintiffs have not shown that Defendants acted oppressively, illegally, or fraudulently. The Court finds that appointment of a custodian is neither necessary nor warranted. Plaintiffs' request is denied.

### VI.  Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion for a Preliminary Injunction. An appropriate Order will follow.

DATE: August 18, 2022

BY THE COURT:

/s/ Chad F. Kenney

_____

CHAD F. KENNEY, JUDGE