IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN MINEHAN, individually and derivatively on behalf of CHRISTI INSURANCE GROUP, INC.,** *Plaintiffs,* | : : : : : | **CIVIL ACTION** |
| v. | : : | No.   21-5314 |
| **ERIC G. MCDOWELL, et al.,** *Defendants.* | : : | |

## MEMORANDUM

**KENNEY, J.**                                                                                                    **JANUARY 17, 2023**

### I.   INTRODUCTION

Plaintiff Kevin Minehan, individually and derivatively on behalf of Christi Insurance Group, Inc. ("Christi") (collectively "Plaintiff"), asserts eleven claims against Eric G. McDowell and Andrew T. Lunney (collectively, the "Defendants"[1]), and McFadden Scott Insurance LLC ("Defendant McFadden"), alleging breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, minority shareholder oppression, civil conspiracy, violation of Pennsylvania's Wage Payment and Collection Law, breach of contract, violation of the Defend Trade Secrets Act, and violation of the Pennsylvania Uniform Trade Secrets Act. ECF No. 57. Plaintiff seeks injunctive relief and appointment of a receiver for oppressive actions and waste of corporate assets. *Id.* Defendants bring eight counterclaims for breach of fiduciary duty, conversion, unjust enrichment, and fraud. ECF No. 64. Presently before the Court is Defendants' fully briefed and

---

[1] Including Nominal Defendant Christi.

1

argued Motion for Contempt and for Sanctions. ECF Nos. 89, 91, 92, 94, 95, 99. For the reasons set forth below, the Court will grant Defendants' Motion and award $28,220.50 in attorneys' fees and costs. An appropriate order will follow.

## II.   BACKGROUND

Defendants collectively own a majority of the shares of Christi; Mr. McDowell owns forty-two percent and Mr. Luney owns fifteen percent. ECF No. 71 at 4. In turn, Plaintiff owns forty-three percent of Christi and was the President of Christi from 2004 to November 23, 2021. *Id.* at 4–5. Plaintiff was removed as President and replaced by Mr. McDowell (President) and Mr. Lunney (Vice President) by a vote of the partners, in which Plaintiff had the opportunity to participate.[2] *Id.* at 5. His removal followed a June 1, 2021 request, sent by Mr. McDowell through counsel, to allow the Controller to "provide copies of all credit card statements paid by the Agency on a monthly basis for each partner to review" and to require the approval of two partners for all checks and any expenses over $5,000. *Id.* at 4. These requests were based on allegations that Plaintiff was using Christi's assets to enrich his own personal net worth and was doing so without keeping other shareholders properly informed. *Id.*

Following the June 1, 2021 letter, Plaintiff instructed Christi's Controller to shred any and all "unwanted" materials. *Id.* at 5. Shortly thereafter, Christi engaged Mr. Ringeon, CPA, to perform a forensic audit of Christi's books and records from January 2017 through August 2021. *Id.* at 6. Mr. Ringeon determined that Plaintiff owed Christi $230,000 based on his use of the agency's "224 account," which allows partners to pass personal expenses through the agency to

---

[2] Following Mr. McDowell's letter but prior to being removed as President, Plaintiff proposed selling Christi and splitting the proceeds, selling his own shares to Mr. McDowell and Mr. Lunney, or vice versa. ECF No. 71 at 4–5. Mr. McDowell and Mr. Lunney declined such proposals. *Id.*

be deducted from their earnings. *Id.* Mr. Ringeon calculated that more than $1 million in expenses, more than three times the combined expenses of Mr. McDowell and Mr. Lunney, were charged to Plaintiff's credit card over the course of five years. *Id.* Indeed, while Plaintiff was responsible for overseeing Christi's finances as President, he used funds to purchase a gold coin, a yacht, and a cattle farm. *Id.* at 7. Several of Plaintiff's personal transactions were not recorded in Christi's primary set of books or in the general ledger, often at Plaintiff's direction. *Id.* at 8. Importantly, Plaintiff maintains that all of the loans were disclosed and approved, and subsequently repaid in full.

Several developments transpired since Plaintiff was removed from the Presidency. In January 2022, Christi relocated from a building owned by Plaintiff to an office space shared with Defendant McFadden.[3] *Id.* at 10. Mr. McDowell and Mr. Lunney forwent their salaries and, in 2022, Christi dramatically reduced its expenses and paid down its line of credit. *Id.* at 11. Indeed, Christi's profits increased by approximately $600,000 from 2021 to 2022. *Id.* at 12. Finally, employee morale has substantially improved since the change in management. *Id.*

### III. PROCEDURAL HISTORY

Plaintiff initiated this case on December 3, 2021. ECF No. 1. The Court permitted limited discovery related to Plaintiff's Amended Motion for a Temporary Restraining Order and Preliminary Injunction which was filed on May 10, 2022. ECF No. 41. A hearing was held on the Motion on June 2, 2022 and the Court denied Plaintiff's Motion on August 18, 2022.[4] ECF No. 71. An Amended Complaint, Answers, and counterclaims were filed, and the case was

---

[3] This decision was made by Mr. McDowell and Mr. Lunney, and Plaintiff was not included in the decision. *Id.* at 10.
[4] Also on August 18, 2022, the Court denied Defendant McFadden's Motion to Dismiss. ECF No. 73.

referred to Judge Sitarski for a settlement conference. ECF Nos. 57, 64, 69, 77. Settlement before Judge Sitarski was not successful, and the Court subsequently referred the case to mediation proceedings. ECF No. 81. Mediation efforts will begin following the close of fact discovery. ECF No. 96.

Most relevant here, on January 5, 2022, the parties entered into a Stipulated Order in which they agreed, *inter alia*, that:

> "All shareholders involved in this action will refrain from involving any Christi non-Shareholder employee or employee's agent in their disputes. All shareholders also will refrain from defaming, disparaging, speaking ill of, or otherwise tainting the reputation of each other, which for the avoidance of doubt, excludes any good-faith allegations made in the above-captioned matter."

ECF No. 16. On January 10, 2022, Plaintiff filed a notarized acknowledgment of the Stipulated Order in which he swore that he understood the requirements of the Stipulated Order and understood that failure to comply with the Stipulated Order may render him in contempt of the Court. ECF No. 21.

Nevertheless, on December 1, 2022, Plaintiff sent numerous messages to Christi employees and clients in which he sought to "set the record straight" regarding his use of Christi assets. ECF No. 89. Not only did Plaintiff dispute that he stole Christi funds, and generally threatened recipients of his messages, but he also promised to bring a defamation lawsuit related to the allegations against him in this case. *Id.* Accordingly, Defendants filed a Motion for Contempt and Sanctions on December 6, 2022. *Id.* On December 8, 2022, Plaintiff "admit[ed] sending the messages" and "apologize[d] to this Court for allowing his emotions and frustrations to prevail." ECF No. 91 at 1. Plaintiff's Response did not defend his conduct but explained the reason for his lapse in judgment. *Id.* Plaintiff provided that he will "defer to and abide by the

4

Court's decision on the Motion." *Id.* at 3. Following Defendants' Reply (ECF No. 92), a hearing on the motion was held on December 15, 2022. Defendants subsequently submitted an Affidavit seeking $32,842.25 in attorneys' fees and costs related to litigating the Motion for Contempt and Sanctions. ECF No. 95. Plaintiff opposes the dollar amount of attorneys' fees sought on several grounds and requests that the sanction not exceed $2,000. ECF No. 99.

IV. DISCUSSION

For the reasons set for below, the Court finds Plaintiff in contempt of a court order and will award $28,220.50 in attorneys' fees to Defendants.

a. Civil Contempt

The Court may hold a person in civil contempt for violating a court order upon finding by clear and convincing evidence that: (1) the alleged contemnor had knowledge of the order; (2) the order was specific and definite; and (3) the defendant disobeyed the order. *Harris v. City of Philadelphia*, 47 F.3d 1342, 1350 (3d Cir. 1995). For good reason, Plaintiff does not meaningfully dispute that these elements are satisfied. *See* ECF No. 91.

First, Plaintiff was well aware of the Stipulated Order. Indeed, he filed a notarized acknowledgment of the Stipulated Order in which he provided that he understood the prohibited conduct and had discussed penalties associated with violating the Stipulated Order with counsel. ECF No. 21. Second, the Stipulated Order was sufficiently specific and definite. The Stipulated Order expressly prohibited Plaintiff from involving any Christi non-shareholder employees in the dispute between the parties here, and it further prohibited Plaintiff from defaming, disparaging, speaking ill of, or otherwise tainting the reputation of Defendants. ECF No. 16. Third, despite the

Stipulated Order's prohibitions, Plaintiff involved at least 21 people in the dispute by disparaging Defendants' reputations to Christi non-shareholder employees and Christi clients alike. *See* ECF Nos. 89, 92. Plaintiff plainly violated the Stipulated Order by sending the text messages at issue on December 1, 2022. Accordingly, the Court finds Plaintiff in civil contempt for sending messages that violated the Stipulated Order.

      **b.  Sanctions**

Having determined that Mr. Minehan is in civil contempt, the Court must fashion appropriate sanctions. Courts have wide discretion in determining sanctions for civil contempt which may serve two purposes: "coerc[ing] the defendant into compliance with the court's order" and "compensate[ing] for losses sustained by the disobedience." *Marshak v. Treadwell*, 595 F.3d 478, 494 (3d Cir. 2009). Awards of attorneys' fees and costs "are particularly appropriate sanctions in instances of civil contempt." *McNulty v. Middle East Forum*, No. 19-cv-5029, 2020 WL 7769737, at * 4 (E.D. Pa. Dec. 30, 2020). When awarding attorneys' fees, the Court must utilize the "lodestar method," which requires that the attorneys' billing rate is considered in light of prevailing market rates and that the hours set out were reasonably expended for each of the particular purposes described therein. *Pa. Envtl. Def. Found v. Canon-Mcmillian Sch. Dist.*, 152 F.3d 228, 231-32 (3d Cir. 1998); *see also Microsoft Corp. v. United Computer Res. Of New Jersey, Inc.*, 216 F. Supp. 2d 383, 387 (D.N.J. 2002). An attorney's usual billing rate is the starting point for determining reasonableness, and the Court then assesses "the experience and skill of the prevailing party's attorneys and compare[s] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-cv-412, 2019 WL 936645, at *10 (E.D. Pa. Feb. 26, 2019) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183

(3d Cir. 1990)). The Court then calculates "the product of the attorneys' reasonable hourly billing rate multiplied by the number of hours reasonably expended." *Arizona Premium Fin. Co. v. Keystone Surplus Lines*, 2008 WL 11514962, at *2 (E.D. Pa. Jan. 11, 2008).

### i. Reasonableness of the Billing Rates

In 2018, Community Legal Services, Inc. ("CLS") compiled and published prevailing market rates for attorneys in Philadelphia. ECF No. 99 at 4. The Third Circuit and courts in this district have approvingly cited the fee schedule established by CLS. *See, e.g.*, *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). Also recognized by courts in the Third Circuit is the 2022 Real Rate Report by Wolters Kluwer ELM Solutions ("Real Rate Report"). *See Sabinsa Corp. v. HerbaKraft, Inc.,* No. 14-cv-04738, 2022 WL 17446485, at *4 n.3 (D.N.J. Dec. 6, 2022) (recognizing the Real Rate Report as "generally regarded as the legal industry's leading benchmark for law firm rates and staffing trends based on actual invoice data").

Though Defendants' counsel does not provide the years of experience of each attorney who worked on the Motion for Contempt, the Court notes that Mr. DelBello, Mr. Yoon, and Ms. Lamba have been admitted to the Pennsylvania bar since 1996, 2017, and 2015, respectively. ECF No. 95. Accordingly, the Court infers that: (i) Mr. DelBello has at least 26 years of experience; (ii) Mr. Yoon has at least 6 years of experience; and (iii) Ms. Lamba has at least 8 years of experience. All attorneys attended well-acclaimed universities and law schools, graduated with honors, and practice at a premiere international law firm. *Id.*

CLS provides that the prevailing market rate for attorneys with more than 25 years of experience, as of July 2018, was $650-700 per hour. ECF No. 99. Adjusted for inflation,[5] the range is approximately $650-840 per hour. *See* U.S. Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (hereinafter "Inflation Calculator"). According to the 2022 Real Rate Report, litigation partners in the Philadelphia market bill between $485-837 per hour (at the first through third quartiles). *See D'Ottavio v. Slack Techs.*, No. 18-cv-09082, 2022 WL 17976822, at *3 (D.N.J. Dec. 28, 2022) (describing the report). Mr. DelBello bills at a rate of $864.00 per hour. ECF No. 95 at 3. Mr. DelBello's rate is negligibly higher than the ranges contemplated by CLS or the Real Rate Report and, given his expertise, is reasonable.

The prevailing market rate in 2018 for Philadelphia associates with 6 to 10 years of experience was $280-360 per hour. ECF No. 99. In 2022, this range is $336-432. *See* Inflation Calculator. The Real Rate Report provides that similar associates bill between $365-530 per hour (at the first through third quartiles). *See D'Ottavio*, 2022 WL 17976822, at *3. Mr. Yoon and Ms. Lamba bill at rates of $643.50 and $562.50 per hour, respectively. *Id.* Both rates are higher than those compiled by CLS or the Real Rate Report. It may be that Mr. Yoon's and Ms. Lamba's experience justifies these discrepancies, but "[t]he party seeking a fee award bears the burden of establishing the reasonableness of the fee," and counsel has not met that burden. *See Tomasko v. Ira H. Weinstock, P.C.*, 357 Fed. Appx. 472, 478 (3d Cir. 2009). Accordingly, the Court will adjust the rates for both associates to reflect the third-quartile rate contemplated by the Real Rate Report: $530 per hour. *See L.J. ex rel. V.J. v. Audubon Bd. Of Educ.*, 373 Fed. Appx.

---

[5] The CLS rate schedule is more than 4.5 years old, and Courts are neither required nor forbidden from adjusting for inflation. *See Campbell v. Royal Bank Supplemental Exec. Ret. Plan*, --- F. Supp. 3d ---, No. 19-cv-798, 2022 WL 17819804, at *7 n.9 (E.D. Pa. 2022).

294, 297 (3d Cir. 2010) ("Once a district court finds that the prevailing party has failed to sustain its burden with respect to a reasonable market rate, it must use its discretion to determine the market rate.").

With respect to Ms. Rzepela-Auch and Mr. Huzinec, CLS provides a range for paralegals between $192-275 per hour, adjusted for inflation, and does not specify a range for clerical staff. Defendants' counsel has not satisfied its burden to justify the rates billed by paralegal Ms. Rzepela-Auch ($337.50 per hour) or managing clerk Mr. Huzinec ($247.50 per hour). The Court, in its discretion, will adjust Ms. Rzepela-Auch's rate to $275 per hour and Mr. Huzinec's rate to $185 per hour.[6]

### ii. Reasonableness of the Hours Requested

Having determined the reasonable rates to apply, the Court moves to the hours requested. Defendants seek to recoup fees related to litigating the motion for Contempt. ECF No. 95. Plaintiff opposes the number of hours expended on several grounds.

First, Plaintiff insists that his problematic behavior could have been addressed in a simple phone call or letter to counsel. ECF No. 99 at 2–3. Indeed, Plaintiff baldly asserts that "[h]ad counsel received a letter or phone call regarding the text messages at issue, the response would have been the same as the response to the motion: an end to the conduct and a promise not to repeat it." *Id.* at 3. Yet Plaintiff's counsel *repeatedly* represented to the Court that although Plaintiff admitted to sending the texts, whether he violated the Stipulated Order is "a decision for [this Court] to make." ECF No. 101 at 4, 41, 61. Based on this representation, the Court easily

---

[6] This difference reflects the $90 difference between Ms. Rzepela-Auch's and Mr. Huzinec's billing rates as set forth in Counsel's Affidavit. ECF No. 95.

9

infers that a simple letter would not have thwarted Plaintiff from sending additional text messages. Indeed, Plaintiff testified several times that he "didn't think [the messages] violated the order." *Id.* at 18, 23. If he did not appreciate the express provisions of the Stipulated Order at or about the time of sending the messages, it follows that he would not have heeded advice of counsel to desist from similar conduct in the absence of the threat of being held in contempt. *See id.* at 24 ("I didn't think I was [violating the order] at the time, but we're in front of the Judge here now . . ."). Put simply, judicial intervention was necessary to make clear to Plaintiff that the messages violated the Stipulated Order. Moreover, contempt proceedings were specifically contemplated as the repercussion for failure to abide by the Stipulated Order. For these several reasons, the Court will not reduce the attorneys' fees based on Defendants' failure to pursue alternative resolution tactics.

Second, Plaintiff asserts that the work performed was unrelated to the instant Motion or, alternatively, was clerical. ECF No. 99 at 6. Because Plaintiff objects to specific billing entries, the Court must "go line, by line, by line through the billing records supporting the fee request." *Interfaith Community Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 713 (3d Cir. 2005). Plaintiff first objects to the December 1, 2022 entry recorded by Mr. DelBello related to, among other items, preparing a motion to compel. ECF No. 99 at 6. This entry is clearly beyond the scope of the instant Motion and is therefore excluded from the award of attorneys' fees. Although a portion of Mr. DelBello's time was related to reviewing the Stipulated Order, because his time was recorded in a block entry the Court cannot determine how much of the 1.2 hours were indeed spent on the relevant work. Accordingly, the Court will disregard this time entry in its entirety.

10

Plaintiff further disputes five time entries related to circulating the Court's Order, internally tracking deadlines, and coordinating court filings by either professional staff or attorneys. *Id.* The Third Circuit cautions against the "wasteful use of highly skilled and highly priced talent" for matters easily delegable to non-professionals. *Halderman by Halderman v. Pennhurst State School & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995). In *Pennhurst*, the Court declined to award fees for lead counsel's time accompanying an expert on various site visits where, alternatively, a paralegal could have accompanied the expert. *Id.* Since *Pennhurst*, the Third Circuit and courts in this district have declined to award fees related to post-decision interviews with reporters, receiving and forwarding ECF notifications, scheduling meetings and conference calls, being copied on non-substantive emails, calendaring deadlines, and electronically filing court documents. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 101 (3d Cir. 2006); *Nitkin v. Main Line Health*, No. 20-cv-4825, 2022 WL 2651968 (E.D. Pa. July 7, 2022) (collecting cases); *Reg'l Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Tr. v. Castellano*, 164 F. Supp. 3d 705, 718–19 (E.D. Pa. 2016) (collecting cases); *Navarro v. Monarch Recovery Mgmt. Inc.*, No. 13-cv-3594, 2014 WL 2805244, at *5 (E.D. Pa. June 20, 2014). Ms. Lamba recorded three hours across two entries for drafting, revising, and coordinating court filings on December 6 and December 9. ECF No. 95-1. Coordinating court filings is clerical, while drafting and revising the same is not. However, because the time entries at issue are block billed, the Court will exclude them in full.

With respect to time entries made by non-attorney staff, Plaintiff provides that "purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 228 n.10 (1989). The Court finds the following to be purely clerical tasks for which Defendants are not entitled to reimbursement: (i) 0.2 hours for

11

reviewing and circulating the Court's Scheduling Order (Ms. Rzepela-Auch); (ii) 0.4 hours for reviewing and recording the Court's Scheduling Order (Mr. Huzinec); and (iii) 0.2 hours for updating internal records of the hearing date.

Next, Plaintiff asserts that several of the fees incurred result from inefficient workflow and overstaffing or reflect redundant and unnecessary attorney efforts. ECF No. 99 at 7–12. Although Plaintiff characterizes his responsive brief as not presenting a defense, it was nevertheless appropriate for Defendants' counsel to strategize with their clients, draft a reply brief, and prepare for a hearing. Though Plaintiff correctly points out that the Court interjected at several points to streamline the December 15 hearing, it does not follow that Defendants' counsel grossly misspent time during the hearing such that attorneys' fees are inappropriate.

Additionally, the Court is not persuaded that ensuring all counsel understood the filings and edited briefings, in order to most aptly pursue their clients' interest, was an impermissibly redundant use of time. Unlike in *Pennhurst*, counsel here worked in tandem and did not use their time to draft and submit disjointed work product. *See* 49 F.3d at 943–44 (counsel failed to coordinate their efforts and each submitted papers that were both more than 130 pages and represented identical interests). Indeed, as the Third Circuit instructs, Defendants' counsel collaborated in their efforts. The Court does not take *Pennhurst* to mandate that any fees beyond those of an attorney operating in isolation must be deemed unreasonable and declines to strike collaborative efforts with respect to briefing. As to Ms. Lamba's attendance at the hearing on this Motion, *Pennhurst* contemplates only in *dicta* that the attendance of multiple attorneys at a deposition may be unreasonable in the context of attorneys' fees. *Id.* at 943. Yet the Third Circuit has also noted that the attendance of two attorneys at an in-court proceeding may be reasonable from a file management perspective and therefore included in such calculations. *West Virginia*

*Univ. Hosp., Inc. v. Casey*, 989 F.2d 357, 365 (3d Cir. 1990). Ms. Lamba's appearance before this Court is more like *Casey* than *Pennhurst* and the Court is satisfied that the fee associated with her participation is reasonable.

Plaintiff also points out that several of the time entries reflect block billing that encompasses work both relevant and irrelevant to this Motion. Though Defendants' counsel apportioned block billed fees to reflect only the true amount of relevant work performed (ECF No. 95 at 4), the Court does not have insight into the apportionment performed for two such entries. This information is necessary to calculate the adjusted total amount of attorneys' fees due. Because counsel did not indicate the amount of time spent on relevant tasks in Mr. DelBello's December 2 entry nor Mr.Yoon's December 6 entry, the Court will strike both in their entirety. Conversely, the Court will adjust Mr. Yoon's December 9 entry, which delineates the total amount of time spent on relevant work, to reflect his adjusted billing rate. ECF No. 95-1. The Court will not make any further adjustments to the hours reflected in the bill submitted by Defendants' counsel.[7]

### c. Lodestar Calculation

Finally, the Court turns to the lodestar calculation which reflects the product of reasonable billing rates and reasonable hours. *Arizona Premium Fin. Co.*, 2008 WL 11514962, at *2. Based on the Court's calculations, which reflect the adjusted billing rates and adjusted hours,

---

[7] Plaintiff argues, in passing and without citing to any authority, that the pre-bill submitted by Defendants may not accurately reflect the charges for which Defendants will be responsible. However, Mr. DelBello's sworn affidavit supports the accuracy of the bill. Indeed, the pre-bill was submitted in advance of the normal billing cycle by request of the Court. Accordingly, the Court declines to adjust the fees sought because of the nature of the bill.

the total fees associated with the instant Motion is $28,220.50. This is an equitable sanction which proportionately reflects the facts of this particular case.[8]

## V.     CONCLUSION

For the reasons set forth above, Defendants' Motion for Contempt and Sanctions (ECF No. 89) will be granted. The Court will hold Plaintiff in civil contempt and award Defendants' attorneys' fees in the sum of $28,220.50 to be due as set forth in the accompanying order.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**

---

[8] Plaintiff asserts that imposing attorneys' fees in excess of $2,000 is an inequitable sanction because Defendants have been withholding Plaintiff's compensation since February 2022. ECF No. 99 at 13. Yet Plaintiff has not "submitted evidence attesting to his limited financial resources" or otherwise submitted anything to "substantiate [his] claimed inability to pay." *Young v. Smith*, 905 F.3d 229, 237 (3d Cir. 2018). Plaintiff only submits that he has not been paid *by Christi* since February 2022 but says nothing to indicate that he lacks other financial resources. Moreover, though Plaintiff implores the Court to consider the context of this particular case, the facts of this case and his contemptuous conduct do not cut in Plaintiff's favor. Plaintiff did not violate the Stipulated Order on a mere technicality or accidentally. Rather, he grossly violated the clear and unambiguous terms of the Stipulated Order.