IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **KEVIN MINEHAN, individually and derivatively on behalf of CHRISTI INSURANCE GROUP, INC.,** *Plaintiff,* | : : : : : : | **CIVIL ACTION** |
| v. | : : | No. 21-5314 |
| **ERIC G. MCDOWELL, et al.,** *Defendants.* | : : : |  |

## MEMORANDUM

**KENNEY, J.**                                                                                         **DECEMBER 15, 2023**

### I.  INTRODUCTION

This litigation was initiated by Plaintiff Kevin Minehan who alleged that Defendants engaged in various breaches of fiduciary duty to squeeze him out of a company, Christi Insurance Group, Inc. ("Christi"). ECF No. 1. Defendants counterclaimed, arguing that Minehan had misused company funds. *See generally,* ECF No. 55. The case culminated in a bench trial in which Defendants prevailed on virtually every single claim, except for a Wage Payment and Collection Law ("WPCL") claim. *See* ECF No. 180. As this was a shareholders' derivative action in which the company derived substantial benefit, this Court determined that "Defendants are entitled to attorneys' fees and costs," as well as expert costs for the claims on which they prevailed. ECF 180 at 45. The Court also allowed Minehan to claim attorneys' fees for the claim he prevailed upon, but only those fees "that directly and specifically relate to the WPCL claim which formed a minute part of this case." *Id.* at 32 n.16. Each party submitted a delineation of costs and objected to their counterparts' delineation. *See* ECF Nos. 182, 183, 185, 186, 188, 190. Defendants seek a total of $1,277,616.28 in fees and costs, plus $334,810.00 in expert fees, and a supplemental fee of $17,830

for the fees involved in preparing the fee petition, for a total of $1,630,256.28. ECF No. 182 at 5-6. Minehan seeks $207,614.95 for successfully prosecuting his WPCL claim. ECF No. 185 at 8-9. Both attorneys' fees petitions have been fully briefed and are now ripe for review.

## II. DEFENDANTS' FEES

When awarding attorneys' fees in a case of this nature, the Court must utilize the "lodestar method," which requires that the attorneys' billing rate is considered in light of prevailing market rates, and then those rates are multiplied by the number of hours set that were reasonably expended for each of the particular purposes described therein. *Pa. Envtl. Def. Found v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231-32 (3d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)); *see also Microsoft Corp. v. United Computer Res. Of New Jersey, Inc.*, 216 F. Supp. 2d 383, 387 (D.N.J. 2002).

An attorney's usual billing rate is the starting point for determining reasonableness, after which the court then assesses "the experience and skill of the prevailing party's attorneys and compare[s] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." See *Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-cv-412, 2019 WL 936645, at *10 (E.D. Pa. Feb. 26, 2019) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 7 (3d Cir. 1990)). The court then calculates "the product of the attorneys' reasonable hourly billing rate multiplied by the number of hours reasonably expended." *Arizona Premium Fin. Co. v. Keystone Surplus Lines*, No. 05-cv-05910, 2008 WL 11514962, at *2 (E.D. Pa. Jan. 11, 2008).

Defendant's petition outlines a total of 1,720.6 hours of attorney time, plus 78.5 hours of work by support staff, and 35 hours of work by e-Discovery specialists, amounting to their total initial request of $1,277,616.28 in fees and costs. *See* ECF No. 186 at 8-9. In recognition of the

Court's previous decision regarding Defendants' rates, Defendants pre-emptively adjusted down their rates to the Court's preferred figures. *See* ECF No. 186 at 8-9. With the reduced rates multiplied by the same number of hours, Defendants claim $1,115,507.75 in attorneys' fees, and $89,575.83 in costs.

    a. **Minehan's Objections**

Minehan raises several objections to Defendants' petition. First, Minehan objects to Defendants inclusion of fees for their work on Minehan's WPCL claim, on which he prevailed. Second, Minehan asserts that Defendants should have excluded fees expended in defending against Minehan's affirmative claims, and in prosecuting their individual, non-derivative claims. Third, Minehan claims that the fees should be reduced as disproportionate to the recovery because Defendants have requested 43% of the total recovery awarded. Finally, Minehan asserts a number of logistical objections to the petition, arguing that Defendants' attorneys assigned multiple attorneys to perform the same work, worked inefficiently, unnecessarily elongated the litigation, provided unreasonably high fees for their attorneys, billed for clerical work, and failed to provide evidence showing the reasonableness of expert fees and delineate the work performed by the experts.

Some of these objections are meritorious, and the Court will exclude fees where appropriate. The Court agrees that Defendants should not recover fees for their work on Minehan's WPCL claim as he was technically vindicated on that claim. Accordingly, the Court will exclude fees that were directly related to the WPCL claim. *See infra.* The Court will also exclude fees were for purely clerical or administrative work, as required by law. *See infra.* As the Court concluded on a prior motion for attorneys' fees in this case, the rates set by Defendants' attorneys are higher

than those in the authoritative sources on this matter for the community, so those rates will be reduced accordingly. *See* ECF No. 107 at 7-9.

The remainder of Minehan's objections are unavailing. Minehan seeks to distinguish between Defendants' derivative claims on the one hand, and their individual, non-derivative claims and Minehan's affirmative claims on the other, and provide fees only for the former. In fact, Minehan asserts "nearly every, if not every, entry dated before June 10, 2022…should be stricken, because Defendants' work related to their efforts to defend against Minehan's affirmative claims, rather than actively litigate and prosecute their not-yet-existent Counterclaims." ECF No. 183 at 11. As part of this objection, Minehan claims that this Court applied federal law where it should have instead applied Pennsylvania law. Even if Minehan is correct, the analysis would not change. The Pennsylvania statute governing attorneys' fees for derivative actions provides the following:

> If a derivative action is successful in whole or in part, the court may award the plaintiff reasonable expenses, including reasonable attorney fees and costs, from the recovery of the business corporation, but in no event shall the attorney fees awarded exceed a reasonable proportion of the value of the relief, including nonpecuniary relief, obtained by the plaintiff for the corporation.

15 Pa. C.S.A. § 1784(b). Minehan raises two objections to Defendants' fee petition based on this statute, neither of which he supports with any authority on point. Minehan's first objection is that the statute only provides for fees derived from prosecuting derivative claims, and that Defendants should not recover for non-derivative claims or work done before Defendants filed their counterclaims. However, Minehan's objection ignores that although they are technically styled differently, all the claims and counterclaims arose from the same course of conduct. Indeed, Defendants only began to prosecute their derivative claims, for which they recovered, once Minehan filed his case and they began to investigate those allegations. Additionally, the individual and derivative claims were so similar that it would be impossible to segregate them in the way

4

Minehan desires. Finally, the statute's plain language does not exclude recovery for claims brought in tandem with the derivative claims, nor does Minehan provide any case law interpreting the statute in such a manner.

Minehan's second objection arising from the statute is that the fees awarded exceed a "reasonable proportion" of the relief received by the corporation. 15 Pa. C.S.A. § 1784(b). Here, Minehan concedes that "Pennsylvania has not yet defined the phrase 'reasonable proportion.'" ECF No. 183 at 12. To determine how to assess reasonableness of the award, Minehan instead turns to common-fund cases, "in which the attorneys' fees and the clients' award come from the same source and the fees are based on a percentage amount of the clients' settlement award." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see also* ECF No. 183 at 12-13. However, this case is *not* a common fund case, but rather a "mainstream case[]" in which the lodestar award method "is normally employed." *Gunter*, 223 F.3d at 195 n.1 (citing *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1989)). There are two types of attorneys' fees schemes for two types of cases because there are relevant distinctions in the nature of those cases. *See In re SmithKline Beckman Corp. Securities Litigation*, 751 F.Supp. 525, 532 (E.D. Pa. 1990) ("[u]nlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [fee-shifting statutes] reflects the amount of attorney time reasonably expended on the litigation") (quoting *Blum v. Stenson*, 465 U.S. 886, 901 n.16 (1984)). As the Supreme Court notes, the meaning of reasonableness differs based on the category of case, and a reasonable fee in this type of case would reflect "the amount of attorney time reasonably expended on the litigation." *Blum*, 465 U.S. at 901 n.16. This is not a common fund case, and Minehan provides no reason to treat it as one.

Even if this were a common fund case, the question of reasonableness is discretionary and fact-specific, with the Court's ultimate fee award falling well within a reasonable range. Using the total calculated below, Defendants' fee award is approximately 38% of the total judgment. Courts in this circuit have established a "general range" of 19%-45% of the settlement fund as an appropriate fee award. *Smith v. First Union Mortg. Corp.*, No. Civ. A. 98-5360, 1999 WL 509967 at *4 (E.D. Pa. July 19, 1999) (citing *Beckman*, 751 F. Supp. at 544). Although other courts have suggested a lower percentage figure as a preferred or more common figure, they too note that "a District Court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Safety Components, Inc. Securities Litigation*, 166 F.Supp.2d 72, 101 (D.N.J. 2001) (citing *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 736 (3d Cir. 2001)). The numerous differences between the cases cited by Minehan to criticize the award on these grounds and the facts at issue in this case counsel against ruling in Minehan's favor.[1] Again, this is not a common fund case, so the percentage-of-recovery method is not appropriate in the first instance; regardless, Minehan has not produced a comparable case where a lower percentage was awarded, to justify a reduction in Defendants' claimed fees. Moreover, Minehan's conduct throughout the litigation elongated the process, causing Defendants to rack up additional fees. As Minehan notes, the Court denied him relief on many of the motions he filed. *See* ECF No. 183 at 16. This should indicate to Minehan that the Court's judgment is that his filings were not meritorious. The Court rejects Minehan's premise

---

[1] The Court also notes that the chart in *Safety Components* is not in Minehan's favor. 166 F.Supp.2d at 101. The chart cites two cases in which the award was between $1-$2 million, in 1995 and 2000, with a percentage of recovery at 33.3% for each. Minehan has not put forth any facts suggesting that the relevant circumstances of either case are similar to his. Nor do the awards in these two cases suggest that 33.3% is a hard ceiling for an attorneys' fee award, rather than the amount that was appropriate for those two particular cases.

that Defendants unnecessarily prolonged the litigation, and will not reduce attorneys' fees on that basis. Nor has Minehan shown that a different result would be required if the Court adopted the percentage-of-recovery method in this case.

Minehan's objection that fees were billed inefficiently is similarly unsuccessful. Minehan appears to object to the practice of multiple attorneys spending time on the same project. *See* ECF No. 183 at 23 (Minehan objecting to a partner and associate spending a combined 37.2 hours drafting a response to his request for a Temporary Restraining Order and Preliminary Injunction), 24 (Minehan objecting to a partner and associate spending a combined 29 hours to research and draft an answer and counterclaims). In the first instance, "[i]t is not necessarily unreasonable for senior attorneys to review the work of less experienced associates." *Walker v. Gruver*, Nos. 1:11-cv-1223, 1:11-cv-1224, 2013 WL 5947623, at *6 (M.D. Pa. Nov. 5, 2013). The type of duplication that Minehan refers to is improper only where attorneys are "*unreasonably* doing the *same* work"; by contrast, "the activities of reviewing and commenting on another's work product are distinct from the activity of writing the documentation to be reviewed." *Bell v. Lockheed Martin Corp.*, No. 08-6292, 2012 WL 1677240, at *2 (D.N.J. May 14, 2012) (emphasis in original). As such, it is standard practice in law firms for a less-experienced associate to perform the initial research and drafting, and then an experienced partner to review and provide comments, with the associate implementing those comments in an iterative process. *See Ray v. AT&T Mobility Servs., LLC*, No. 18-cv-3303, 2022 WL 1203730, at *4 (E.D. Pa. Apr. 22, 2022). It is eminently reasonable for multiple attorneys to work on the same assignments, especially where the filings are urgent or important—such as when responding to a TRO request or filing counterclaims. *See Bell*, 2012 WL 1677240 at *2 (finding it appropriate for five partners to review the same document when "such motions necessarily involve careful review of the records."). The Court will not reduce

Defendants' fees on the basis that they are duplicative. Aside from a scant few references, Minehan's objections to duplication of work and clerical tasks do not identify specific billing entries that are objectionable. Aside from those discussed *infra*, the Court will not further reduce rates based on these objections.

### b. Reasonable Hourly Rates

On a previous motion for attorneys' fees in this litigation, this Court calculated the reasonable rates for three attorneys and two staff members. *See* ECF No. 107 at 7-9. These reasonable rates were based on the employees' actual billed rates, and then cross-referenced with community fee schedules published by reputable organizations. *Id.* While other attorneys later participated in the case, these five individuals performed the vast majority of the work. *See* ECF No. 186 at 8-9. The only other employee to work on this case for more than 100 hours is Kathleen Princivalle, an associate with two years of experience, who attended a reputable university and law school, graduated with honors, and practices at a premiere international law firm. *See id. See also* ECF No. 182 at 3. Given her level of experience, the Court will adjust her rate to $315. *See* ECF No. 107 at 8 (adjusting rates to "reflect the third-quartile rate contemplated by the Real Rate Report."). The petition also notes the work of a few more attorneys, totaling approximately 80 additional hours of work. ECF No. 186 at 8-9. Although Defendants did not provide any support justifying these attorneys' rates, the Court will nevertheless place their rates at the third quartile of the appropriate range.[2]

---

[2] Thus, Paul Jaskot, a partner with 28 years of experience, will have his rate set at $864; David Surbeck, a partner with 29 years of experience, will have his rate set at $864; Jasmine Chean and Clayton Vignocchi, associates with seven years of experience, will have their rates set at $530; and Victoria Cates, an associate with three years of experience will have her rate set at $315. Additionally, Kama Siegal, a legal research specialist with 25 years of experience will have her

### c. Reasonable Number of Hours

With the rates determined, the Court then multiplies those rates by the number of hours expended. Before performing that calculation, the Court will first exclude entries from attorneys that are a "wasteful use of highly skilled and highly priced talent." *Halderman by Halderman v. Pennhurst State School & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995). Similarly, the Court will exclude *any* "purely clerical or secretarial tasks that should not be billed at a paralegal rate." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

With these guidelines, the Court will exclude 5.1 hours for Mr. Huzinec that were used for "recording" court orders, discovery requests, and deadlines; 0.2 hours for Ms. Rzepela-Auch that were used for "calendaring" a court order; 0.8 hours for Mr. Yoon, used for "coordinating" access to a transcript and documents, and 11.9 hours for Ms. Lamba for "coordinating" filings and service of subpoenas.[3] This reduces Defendants' fees by an additional $7,729.50.

The Court will also subtract the fees that can be traced to Minehan's WPCL claim, on which he prevailed. Upon independent review, the Court identified the same 11 entries that Defendants cite in their petition. See ECF No. 186-1 at 14. Where entries were block-billed, Defendants applied reductions they believed to be appropriate, and the Court will accept their submission. This reduces Defendants' claimed fees by an additional $7,074.

### d. Defendants' Expert Fees

---

rate set at $200. Petitioners cite an additional 35 hours of work from five e-discovery specialists. ECF No. 186 at 8-9.

[3] The entries discussed here are block-billed, and thus also include material that is not purely clerical. However, the block billing practice prevents the Court from ascertaining precisely how much of the time in the block-billed entries was spent doing clerical versus non-clerical work. Therefore, the Court will exclude these entries in their entirety. *See* ECF No. 107 at 13.

Defendants' experts did not submit traditional line-by-line billing records. Instead, they provided periodic bills in which they described their work in narrative form, and delineated the total number of hours spent during that period. *See* ECF No. 182-2 at 6-15. "The district court has the obligation to conduct a thorough and searching review of the time claimed by a prevailing party's experts," but Defendants' experts' billing procedures make that review more difficult. *Interfaith Community Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 714 (3d Cir. 2005). Nevertheless, the experts' affidavits do contain a substantial amount of detail regarding their work, even if those records are not displayed as traditional line-by-line records. *See e.g.*, ECF No. 182-2 at 6.[4] The information provided in the experts' affidavit is sufficient to support their fees. *See Kratzer v. Wegman's Restaurant, LLP*, No. Civ. A. 04-05889, 2005 WL 2847320 at *3 n.3 (E.D. Pa. Oct. 27, 2005) (finding that an affidavit detailing the expert's "activities related to this case, hours spent on this case, and hourly rate charged" were sufficient to support the fee request).

---

[4] In one approximately two-month period, the experts logged 260.75 hours of work, and included the following narrative: "[R]eview and consideration of the initial TRO in the above-mentioned matter, Defendant/Client's response thereto, the report and related schedules and underlying documents reviewed by Erik Ringoen for purposes of his report issued on behalf of the Agency, as well as schedules emanating from such utilized in connection with Defendants' response to the TRO, verification and re-performance of the analyses reflected in the report of Erik Ringoen, performance of various analyses of activity maintained in the general ledger, including specific consideration of numerous income statement expense accounts and the 224 account of Mr. Minehan, review and consideration of statements underlying the Agency's various bank accounts (including the line of credit, premium trust escrow, and payroll accounts) and credit cards, consideration of selected payments made by the Agency to identified credit cards and vendors, focused on transactions initiated by Mr. Minehan, as well as discrete transactions reflected in email communications or other documents that appear not to have been recorded in the Agency's general ledger, preparation of a draft report in the matter based on Friedman's analysis to date, as well as an abridged version of said report for inclusion in the Agency's brief for settlement discussions, assistance with preparation for the deposition of Mr. Ringoen in the matter, and assistance with preparation for mediation, as well as telephone calls with You and/or Counsel pertaining to all of the foregoing."

Regardless of the layout of the billing records, this Court has found that the experts' work was critical to the litigation. In its Findings of Fact and Conclusions of Law, the Court found that "Duffy was a credible expert whose findings were supported by reliable sources and methods," (ECF No. 180 at 42) and noted that it was "well-positioned to conclude that Duffy's testimony was indeed quite helpful…in many respects, but most crucially, in cross-checking Minehan's self-serving statements against the financial records." ECF No. 180 at 25. In particular, "Duffy's initial report revealed substantial misappropriation of Christi funds by Minehan within a ten-year period" and "Duffy's supplemental report…ultimately identified eleven categories of misappropriation by Minehan." *Id.* ¶¶ 117, 119. Duffy's report was helpful in identifying the specific methods Minehan used to misappropriate funds, such as "identify[ing] instances where Minehan claimed to have 'repaid' a loan, but in reality, these repayments were bounced checks, duplicative, or immediately transferred out of Christi for Minehan's personal use." *Id.* at 42. Duffy also clearly explained his report and any inconsistencies. *See id.* at 42 n.26 ("when Duffy was cross examined on specific 'repayments' that were not included in his analysis, he had a response for each."). Ultimately, the Court concluded that "Duffy was a credible expert whose findings were supported by reliable sources and methods," (*id.* at 42) and "adopt[ed] Duffy's calculations in full." *Id.* at 43. The experts' narratives do not contain any clerical or administrative work that is inappropriate for reimbursement. Therefore, the Court will award the expert fees in full.

    **e. Supplemental Fee Petition**

Finally, Defendants filed an additional affidavit attesting to the hours spent on preparing the attorneys' fee petition. Defendants submit that, using the lodestar figures previously approved by this Court, they spent a total of 44 hours, amounting to $17,830 in fees and costs when using the previously-approved lodestar rates. *See* ECF 189 at 5. These fees were incurred in preparing

11

Defendants' initial fee petition, responding to Minehan's many objections to that petition, as well as objecting to Minehan's petition. The vast majority of the work was done by associates at the firm. *Id.* Minehan did not file objections to this petition.

As a general matter, "fees on fees, uncontested by [defendants], are compensable so long as the hours spent are not excessive." *Brown v. City of Pittsburgh*, No. 06-cv-393, 2010 WL 2207935 at *2 n.5 (W.D. Pa. May 27, 2010) (citing *Hernandez v. Kalinowski*, 146 F.3d 196, 199-200 (3d Cir. 1998)). The Court finds that the time spent on the fee petition represented a minute part of the total litigation, notwithstanding the drafting of three separate filings. Further, the fees requested were primarily incurred by an associate with two years of experience, with just 3.2 hours of partner time. This breakdown accurately reflects the relative importance of the fee petition. Therefore, the supplemental fee petition will be granted in full.

Multiplying the reasonable rates by the hours expended, and making the deductions expressed above, reaches a result of $1,117,904.25 in attorneys' fees for Defendants, plus the requested $334,810 for Defendants' experts.

### III. PLAINTIFF'S ATTORNEYS' FEES

Minehan also submitted a fee petition, which is subject to the same lodestar analysis as Defendants' petition. The Court found in favor of Minehan on the WPCL claim in the amount of $246,018.22, plus "reasonable attorneys' fees **as to this claim only**." ECF No. 180 at 32 (emphasis in original). The Court explained that "the Court will only award attorneys' fees and costs that directly and specifically relate to the WPCL claim which formed a minute part of this case." *Id.* at 32 n.16. Minehan calculated applicable attorneys' fees by first totaling the number of billing entries that included WPCL-related issues, coming to a total of $525,284.78 in fees and costs. ECF No. 185 ¶¶ 22-24. Minehan then reviewed the entries that included material that was not exclusive

to the WPCL claim, "carefully considered the task and the amount of time that might fairly be attributed to prosecuting only the WPCL claim," and applied a reduction believed to be appropriate. *Id.* ¶ 27. This resulted in an average reduction of commingled claims of 73%, and an updated amount of fees and costs at $207,614.95. *Id.* ¶¶ 27-29.

As with Defendants, the Court will first assess the reasonableness of Minehan's attorneys' rates. The attorneys who worked on Minehan's case all graduated from well-known law schools and work at reputable law firms. *See* ECF No. 185 at 1-5. All rates set out in Minehan's fee petition are lower than the levels set out in the CLS report.[5]

    a. **Defendants' Objections**

Defendants raise several objections to Minehan's petition. As a threshold matter, they allege that Minehan's filing was untimely, and he was required to have filed the motion within two weeks after entry of judgment, pursuant to Fed. R. Civ. P. 54(d)(2)(B)(i). However, Minehan correctly points out that the Rule only applies to a "motion" for attorneys' fees. ECF No. 190 at 1-2. Defendants' reading of the Rule is incorrect. Since the Court in its Memorandum Opinion (ECF No. 180) had already allowed Minehan to claim fees both the Court and Defendants were already on notice that a fee petition was forthcoming. As the Advisory Committee notes, "one purpose of

---

[5] For completeness, Mathieu Shapiro, a partner with 28 years of experience will have his rate set at $570-$595; Brett Wiltsey, a partner with 22 years of experience will have his rate set at $500-$530; Andrew J. Reilly, a partner with over 25 years of experience will have his rate set at $475; Richard Limburg, a partner with 40 years of experience will have his rate set at $650; Warren Ayres, a partner with 49 years of experience will have his rate set at $685; Melissa Blanco, an associate with four years of experience will have her rate set at $330-$360; Tiffani Youngblood, a litigation paralegal with four years of experience will have her rate set at $215-$225; Marissa Purnell, a litigation paralegal with four years of experience will have her rate set at $225; Mehreen Usman, a first-year law clerk, will have her rate set at $225; and Aleem Choudhary, a Director of Litigation Support with over ten years of experience will have his rate set at $230. ECF No. 185 at 1-5.

[the timing] provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed." Fed. R. Civ. P. 54, Notes of Advisory Committee on Rules – 1993 Amendment. Indeed, Defendants were "alert[ed]…that there is a claim for fees" by Minehan on the day the Memorandum was filed. *Id.* Minehan's petition was not untimely.

Defendants also object that Minehan's WPCL billing entries are commingled with other matters, and not specific to the WPCL claim. Defendants point to several entries that Minehan did not reduce, but that do not appear to be related solely to the WPCL claim. The Court notes that reduced entries were reduced by an average of 73%. ECF No. 185 ¶ 27. The Court also observes that Minehan's assessment of costs was reduced by a blanket proportion of only 75%. *See id.* at Exhibit B, Part 2. These proportions are not in line with the time spent on this issue during trial, which the Court recollects to be less than two hours of a three-day trial. There is a substantial disparity between the time Minehan alleges to have spent prosecuting his WPCL claim – amounting to fees of over $200,000 – and the time Defendants have attributed to that claim – amounting to just over $7,000 in fees. Despite this disparity, the Court will rely on Minehan's representations as to the exact amount of fees incurred as a starting point.

After review, the Court determines that several of the entries that were not reduced do not relate in full to the WPCL claims. In fact, some of them do not appear to relate to the WPCL claim at all, even when considered in the context of the surrounding entries. Therefore, the Court will not provide fees for entries 27, 54, 60, 108, 114, 115, 150, 223, 240 and 375 in Minehan's submission. *See* ECF No. 185 at Exhibit B, Part 1. This reduces Minehan's proposed attorney fee recovery by $7,599.

As to Minehan's submission of fees from Saxton & Stump in the amount of $51,332.07, these bills are not reduced or marked out in any way to identify the WPCL entries, and appear to

be submitted in their entirety. *See* ECF No. 185 at Exhibit B, Part 3. For example, Saxton & Stump's billing entries include time for reviewing motions to exclude experts, conversations with co-counsel and the client, and attendance at trial that are billed in full and not reduced in any way. *Id.* Neither Minehan's petition nor his reply addresses Saxton & Stump's process for submitting attorneys' fees in this litigation. *See generally*, ECF Nos. 185, 190. As a result, the Court cannot ascertain what proportion of the Saxton & Stump fees went toward prosecuting Minehan's WPCL claim. The Court clearly noted in its Memorandum Opinion that "Plaintiff's counsel must submit proof of attorneys' fees relative to the WPCL claim. Attorneys' fees and costs as to this issue must be specifically identified and attested to. If the fees and costs cannot be identified independently of the entire litigation, the Court will not award such fees and costs." ECF No. 180 at 32 n.16. Having not delineated the Saxton & Stump fees specific to the WPCL claim, Minehan will not recover any of the $51,332.07 in fees for Saxton & Stump's work. *See* ECF No. 185 at Exhibit B, Part 3.

With these reductions, Minehan's recoverable attorneys' fees net out to $148,683.46. However, this figure is still disproportionate to Minehan's recovery. Indeed, Minehan strongly pushes for using the percentage-of-recovery method in determining the appropriateness of Defendants' asserted fees, and applying Minehan's method to Minehan's fees would yield a proportion of over 60%. The Court acknowledges that ascertaining time specifically spent on the WPCL claim is a difficult task given the nature of the litigation, and credits Minehan's attorney's claim that he "carefully considered" this issue. ECF No. 185 ¶ 27. Nevertheless, because Minehan's prosecution of the WPCL claim occupied fewer than two hours of a three-day trial, the Court will use its discretion to reduce Minehan's fee award to 38% of his substantive award – the

same percentage obtained by Defendants. A total of $93,486.92 reasonably reflects the time spent on the WPCL claim relative to the rest of the case.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' petition for attorneys' fees in the amount of **$1,117,904.25** in attorneys' fees and **$334,810** in expert fees.

The Court further **GRANTS IN PART** Plaintiffs' petition for attorneys' fees in the amount of **$93,486.92.**

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**